UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| BCI ACRYLIC, INC., | ) |
| Plaintiff, | ) |
| | ) Case No. 2:23-CV-908-JPS |
| v. | ) |
| | ) Hon. Judge J.P. Stadtmueller |
| MILESTONE BATH PRODUCTS, INC. *d/b/a* BELLASTONE BATH SYSTEMS and TIGHTSEAL LLC, | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ..................................................................................... 1
II. ARGUMENT............................................................................................................................ 3
III. CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Blue Gentian, LLC v. Tristar Prods., Inc.*,
   70 F.4th 1351 (Fed. Cir. 2023) ...........................................................................2, 3, 5, 7, 8, 9

*Bushberger v. Protecto Wrap Co.*,
   No. 07-CV-8, 2008 WL 725189 (E.D. Wis. 2008)......................................................................9

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)....................................................................................................................4

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998)........................................................................................2, 4, 9, 11

*Field Turf, Inc. v. Sw. Recreational Indus., Inc.*,
   357 F.3d 1266 (Fed. Cir. 2004)..................................................................................................4

*Israel Bio-Eng'g Project v. Amgen, Inc.*,
   475 F.3d 1256 (Fed. Cir. 2007)................................................................................................11

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)....................................................................................................................6

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001)..................................................................................................3

*STC.UNM v. Intel Corp.*,
   754 F.3d 940 (Fed. Cir. 2014)....................................................................................................2

*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998)......................................................................................................................4

**Statutes**

35 U.S.C. § 261............................................................................................................................11

35 U.S.C. § 281..............................................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1, 3, 11

Defendants Milestone Bath Products Inc. (d/b/a Bellastone Bath Systems) and TightSeal LLC (collectively "Milestone") respectfully move this Court to dismiss this patent infringement action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff BCI Acrylics, Inc. ("BCI") alleges that Milestone infringes U.S. Patent No. 10,144,243 ("the '243 patent") (Ex. A) through Milestone's simulated tile-patterned acrylic sheets including its BellaStone Illusion Series ("Accused Products"). However, BCI is not the proper, sole owner of the '243 patent, and therefore lacks standing to bring this action.[1] Mark Domanico ("Mr. Domanico"), the presently named sole inventor of the '243 patent, while passionate about his "invention," cannot dispute that he and Mr. Whitley discussed the very same ideas that are embodied in dependent claims 5 and 7 of the '243 patent, before any application was filed. While Mr. Domanico considers himself to be the sole inventor of the '243 patent, his fuzzy recollection of the timeline of events does not disturb the sworn, corroborated testimony of Jeff Whitley ("Mr. Whitley") that claims 5 and 7, the subject matter that Plaintiff's argued set the patent apart from the prior art, are the inventive contribution of Mr. Whitley. As such, Mr. Whitley, who has not been joined to this litigation as a plaintiff, is a proper inventor of the '243 patent and his omission from Plaintiff's complaint is fatal to Plaintiff's standing to bring this case.

## I. SUMMARY OF THE ARGUMENT

BCI's patent infringement allegations against Milestone must be dismissed for lack of standing because a co-inventor of the subject matter claimed in the '243 patent was not listed as an inventor. More specifically, co-inventors, Mr. Domanico and Mr. Whitley, *jointly developed*

---

[1] The issue of standing is not a jury-triable issue such that there are no relevant jury instructions to submit herewith. *Cf.* Dkt. 7 at 5. Plaintiff and Defendants have conferred and disagree whether a jury instruction would be proper.

the invention that ultimately issued as the '243 patent, but the '243 patent issued without identifying Mr. Whitley as a co-inventor.

Pursuant to 35 U.S.C. § 281, a purportedly aggrieved patent co-owner seeking redress for infringement ***must*** join all other co-owners of the allegedly infringed patent. *See STC.UNM v. Intel Corp.*, 754 F.3d 940, 944 (Fed. Cir. 2014). Further, when there are multiple owners of a patent, each co-owner ***must*** consent to join an infringement action as plaintiff and consequently "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). Plaintiff's failure to include Mr. Whitley as a co-plaintiff means Plaintiff lacks standing to bring this litigation.

This Court possess authority (although not the obligation[2]) to correct inventorship of patent upon a determination that a co-inventor has been improperly omitted from the patent. *See Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1357 (Fed. Cir. 2023). While there exists a presumption that the listing of inventors on the face of a patent application is accurate, an alleged omitted co-inventor can overcome this presumption by demonstrating, by clear and convincing evidence, his or her individual contribution to the conception of the claims. *Id.* In other words, "an alleged co-inventor must show that he contributed significantly to the conception—the definite and permanent idea of the invention—or reduction to practice of at least one claim." *Id.* at 1358. To do so, the alleged omitted co-inventor must put forth evidence corroborating his or her testimony, including but not limited to, contemporaneous documents, physical evidence,

---

[2] To the extent this Court finds Mr. Whitley a co-inventor of the '243 patent, potential next steps include ordering the United States Patent and Trademark Office ("USPTO") to identify Mr. Whitley as an inventor, a finding that the '243 patent is invalid, or simply dismissing the lawsuit with prejudice and allowing the current owner of the '243 patent the opportunity to correct the inventorship on its own with the USPTO.

2

circumstantial evidence, and/or oral testimony of another. *Id.* Mr. Whitley's contributions are found in claims 5 and 7 of the '243 patent and are corroborated with the evidence accompanying this motion.

The Federal Circuit has offered a substantial amount of guidance on the standards regarding whether or not an inventor's testimony has been sufficiently corroborated. *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001). In short, this guidance amounts to, "[d]ocumentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Id.* This type of corroboration can be found in the email communications between Mr. Whitley and Mr. Domanico, as well as by looking at the prosecution itself.

BCI's Complaint must be dismissed because BCI is not the sole owner of the entire interest in the '243 patent. In this case, an email from Mr. Whitley to Mr. Domanico sent years before this dispute, and well before the filing of the '243 patent, unambiguously corroborates Mr. Whitley's sworn declaration regarding his contributions to the invention of at least claims 5 and 7 of the '243 patent (the "2014 Email") (Mr. Whitley's Declaration attached as Ex. B and the 2014 Email as Exhibit 2 to that Declaration), and thereby substantiates Mr. Whitley's formal title of co-inventor, and therefore co-owner, of the '243 patent. Because Mr. Whitley never assigned any interest to BCI, BCI does not have full right and title to commence this action. As a result, BCI lacks standing to sue for patent infringement as it has not included Mr. Whitley as a co-plaintiff, and as such, this Court must dismiss the instant Complaint for lack of subject matter jurisdiction.

## II. ARGUMENT

In a Rule 12(b)(1) motion to challenge the jurisdiction of the court, the burden lies with the party invoking the court's jurisdiction. This principle applies to a jurisdictional challenge based

on lack of standing. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103-04 (1998). In evaluating whether subject matter jurisdiction exists, courts may freely consider extrinsic materials submitted by the parties to satisfy itself that jurisdiction is proper because "a court may not . . . extend its jurisdiction where none exists." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). This type of information includes the sworn declaration of Mr. Whitley (Ex. B), the deposition testimony of Mr. Domanico (Ex. C), the intrinsic record of the patent (including the provisional application (Ex. D) and the non-provisional file history of the '243 patent (Ex. E).

In order "[t]o bring an action for patent infringement, a party must either be the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue. *Field Turf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004). Furthermore, when there are multiple owners of a patent, "all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon*, 135 F.3d at 1468. BCI has not alleged or pled any evidence that shows Mr. Whitley, an individual that is a proper inventor of at least one claim of the '243 patent, consented to join as a plaintiff in this lawsuit; to the contrary, Mr. Whitley does not consent to this suit. Ex. B at ¶ 12.

Milestone does not dispute BCI is a co-owner of the '243 patent; however, Mr. Whitley is also an inventor of the '243 patent and thus possesses rights in the patent as a co-owner. Mr. Whitley and Mr. Domanico both agree that, prior to the 2014 Email, the two discussed Mr. Domanico's idea of carving a pattern into an acrylic sheet using a CNC machine. *See* Ex. C, at 142:15-24 (Mr. Domanico stated, "I saw [Mr. Whitley] right before [the 2014 Email], and we talked about the product, and I don't remember talking -- truth? I don't remember talking to him about this. I'm sure looking at this letter, he did, but I was so busy at the time. . . ."); Ex. B, at ¶ 7 (Mr. Whitley stated, "Mr. Domanico and I met to discuss Mr. Domanico's idea of carving out

4

Case 2:23-cv-00908-JPS    Filed 12/01/23    Page 7 of 15    Document 27

certain tile patterns from a multi-layer acrylic sheet. During this meeting, I commented that I had some concerns with regard to the form of grout line that Mr. Domanico was proposing, including that without a properly rounded corner, the grout lines could injure a customer. I also informed him that the cuts he was making need not be as deep as he was proposing."). Subsequent that conversation (that only Mr. Whitley has a clear recollection of), Mr. Whitley provided an email to Mr. Domanico that confirmed the subject matter of those earlier discussions. Ex. 2 to Whitley Declaration (Ex. B).

In the conversation, and again in the 2014 Email, Mr. Whitley suggested an alternative design to the grout lines and provided Mr. Domanico an image detailing the suggested rounded grout lines. Ex. 2 to Whitley Declaration (Ex. B). Although Mr. Domanico responded that he "already ordered a rounded bit for [the] CNC Router," he admits that he "wanted [Mr. Whitley] to have the samples ASAP," confirming the prototyping and design efforts were ongoing. *Id.* This collaboration was commonplace between Messrs. Whitley and Domanico. Ex. B at ¶¶ 5, 9.

Moreover, the same day that Mr. Whitley suggested alternative designs in the 2014 Email, Mr. Domanico's lawyer, Mary Riordan ("Ms. Riordan"), requested to meet with Mr. Whitley because she had "a few concepts [she] want[ed] to run by" Mr. Whitley and wanted to "get [his] feedback" regarding the "new tile walls." Ex. F. It is telling that Ms. Riordan—who Mr. Domanico stated "ran the company" while he "went on the road and showed people [his] prototypes" (*see* Ex. C, at 100:4-11)—seemingly considered Mr. Whitley to be a valuable contributor to the "new tile walls" subsequently disclosed in the '243 patent. Ex. F.

Notably, while Mr. Domanico self-proclaimed life-long tinkerer and a self-proclaimed inventor, his understanding of inventorship is different than the legal definition, which must govern this inquiry. *Compare Blue Gentian*, 70 F.4th at 1358 ("An alleged co-inventor must show that he

5

Case 2:23-cv-00908-JPS    Filed 12/01/23    Page 8 of 15    Document 27

contributed significantly to the conception . . . or reduction to practice of at least one claim. And that these contributions arose from some element of joint behavior, such as collaboration or working under common direction with the other inventor(s).") (internal citations omitted), *with* Ex. C, at 178:13-17 (Mr. Domanico, when asked whether he understood the legal test to qualify as an inventor stated, "No, I just thought ["inventor"] was a word. I call myself a tinkerer usually, but I thought [t]his was a more formal procedure so I went with inventor."), *and id.* at 13:22-14:8, 15:8-14 ("I ***invented*** a system where I repaired surfaces" by "start[ing] with Bondo, and then I had a series of chemicals that I mixed on-site true to the color of the surface that I was at. I would spray it or brush it depending on the surface, and then I'd have to buff it to the same finish as the rest of the counter."), *and id.* at 27:8-18 ("I ***invented*** a program that identified the bathtub, and you put in all the parameters of measuring . . . into the computer program that I wrote, and it would tell you: You have a Kohler model . . . . We had a bunch of them that we did not know what they were. So we called them UKs, unknowns."). For example, using Mr. Domanico's understanding of the definition of "invent," he invented a number of "concepts" that are nothing more than obvious subject matter under *KSR*, "applying a known technique to a known device (method, or product) ready for improvement to yield predictable results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415-421 (2007). Such ideas, while they may provide value to making a sale to a potential customer, are not themselves per-se inventive. *Id.* These include Mr. Domanico's use of Bondo and pigment, as well as his lookup software program. Ex. C at 13:22-14:8, 15:8-14, 27:8-18.

Over the course of Mr. Domanico's deposition, his testimony was clear that he believed he was the only inventor of the '243 patent. Ex. C, at 164:24-165:10 ("I'm calling Jeff a liar here . . . I was alone in that room working on stuff and making drawings . . . . But this makes it sound like we both had lab coats, sitting side by side. Nothing could be farther from that."). However,

it is undeniable that Mr. Domanico's recollection is not as clear as his insistence would suggest. *See, e.g.*, *id.* at 40:6-16 ("I don't know. That's the truth. I don't remember. It was a whirlwind. . . . I'm not good with dates. . . . I really don't know, you know, it's a blur to me."); *id.* at 97:13-17 ("A date? I couldn't tell you what I had for breakfast last week."); *id.* at 107:23–24 ("I really am not good with dates."); *id.* at 105:22-25 (When asked if he remembered when he placed an order for rounded router bits, Mr. Domanico responded, "I have no idea.").

While Mr. Whitley's contribution may not have been directed to the general concept of removing material using a CNC machine (the subject matter that Mr. Domanico believes he invented, *see id.* at 133:13-15 (responding, "Not that I know of" when asked if he knew of any other ways to do CNC grouting that would not infringe the '243 patent)), Mr. Whitley undeniably conceived of and contributed to the subject matter of claims 5 and 7. Ex. B, at ¶¶ 7-8 (Mr. Whitley stating, "Together, Mr. Domanico and I developed a method of carving a tile pattern into a sheet of acrylic plastic, which would then have simulated grout lines via the carved seams. . . . Specifically, Mr. Domanico and I met to discuss Mr. Domanico's idea of carving out certain tile patterns from a multi-layer acrylic sheet. During this meeting, I commented that I had some concerns with regard to the form of grout line that Mr. Domanico was proposing, including that without a properly rounded corner, the grout lines could injure a customer. I also informed him that the cuts he was making need not be as deep as he was proposing."). Mr. Domanico's hazy recollection cannot rebut Mr. Whitley's clear recollection of this exchange.

The facts of this case are akin to those in *Blue Gentian*, where the Federal Circuit held that information exchanged at a single meeting was sufficient to establish an alleged co-inventor as a valid co-inventor. *Blue Gentian*, 70 F.4th at 1364-65. In *Blue Gentian*, the unnamed co-inventor showed "confidential information about hoses he had designed, discussed technical details about

7

how he planned to manufacture his hose, and *discussed alternative ways to build an expandable hose.*" *Id.* at 1365 (emphasis added). The court rejected Blue Gentian's argument that the named inventor had already conceived of the alternative designs before the meeting because "the strength of documentary evidence showing [the alleged co-inventor's] familiarity with the three hose elements before the meeting lend[ed] credibility to his account of conveying those ideas to Blue Gentian at a meeting centered around discussing and presenting on an expandable hose." *Id.* at 1362, 1364 ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated."). Mr. Domanico and Plaintiff have no such evidence; to the contrary, only Mr. Whitley's testimony regarding the pre-email communication (which is unrebutted by Mr. Domanico and corroborated by Mr. Whitley's own email communication) establishes the directional flow of information regarding the subject matter claimed in claims 5 and 7.

Ultimately, the court in *Blue Gentian* held that the meeting between Blue Gentian and the alleged co-inventor satisfied "the requisite element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Id.* at 1365 (internal citations omitted).

Tellingly, Mr. Whitley's idea of using rounded grout lines is specifically recited in claim 5 of the '243 patent, as shown below:

> I wanted to share a concern that several people here voiced on this product, perhaps you have even heard this before. Although we really love the concept, everybody here was concerned with the sharp edges at the grout lines. We think this will prevent some people from purchasing the walls, and in an extreme case could be possible to actually cut someone.
>
> As a suggestion, the exact same process but using a different shaped bit may create a smoother cut that solves the above issues. Less of an impression would also make it more realistic.
>
> This is the suggestion

> 5. The method of claim 4 wherein the grout lines are defined by rounded edges.

*Compare* Ex. 2 to Whitley Declaration (Ex. B) (top above), *with* Ex. A, at claim 5 (reciting the same) (bottom above). Similarly, as shown below, Mr. Whitley's idea to remove less material is specifically recited in claim 7 of the '243 patent:

> As a suggestion, the exact same process but using a different shaped bit may create a smoother cut that solves the above issues. **Less of an impression would also make it more realistic.**
>
> This is the suggestion

> 7. The method of claim 1 wherein **the predetermined amount of material removed from the top displayed surface is substantially 0.005 inches.**

*Compare* Ex. 2 to Whitley Declaration (Ex. B) (top above), *with* Ex. A, at claim 7 (reciting the same) (bottom above).

Courts have repeatedly emphasized that a co-inventor's "contribution to one claim is enough." *Ethicon*, 135 F.3d at 1460; *see also Blue Gentian*, 70 F.4th at 1357 ("All inventors, even those who contribute to only one claim or one aspect of one claim of a patent, must be listed on that patent."); *Bushberger v. Protecto Wrap Co.*, No. 07-CV-8, 2008 WL 725189 (E.D. Wis. 2008) ("[A] co-inventor need not make a contribution to every claim of a patent. . . . A contribution to one claim is enough."). For example, in *Ethicon*, the court affirmed a district court's ruling that the alleged co-inventor invented two claims—out of fifty five claims total—and thereby was a co-owner of the patent *in toto*. *See Ethicon*, 135 F.3d at 1465-66. The court in *Ethicon* held that the alleged co-inventor's testimony was adequately corroborated by his sketches depicting the claimed designs that were created at the time of conception. *Id.* at 1464. The same type of evidence corroborating Mr. Whitley's contribution to the claims of the '243 patent exists here.

Further evidence of Mr. Whitley's contribution can be found in the intrinsic record itself. In 2014, Mr. Domanico's patent attorney filed a provisional patent application (Ex. D). The provisional lacks any description of the subject matter of claims 5 or 7. As such, the invention that

9

Mr. Domanico ultimately assigned in his assignment to Luxury Bath (Ex. G), and then on to Plaintiff (Ex. H), was different than the invention that ultimately is reflected in the '243 patent. As the prosecution continued and the provisional application was converted to a non-provisional application, Plaintiff's prosecution counsel both added the subject matter of claims 5 and 7 to the specification, (*see* Ex. C, at 114:12-19; Ex. E, at 68; Ex. A, at 2:62-64, 3:1-6), but expressly argued that the subject matter of these two claims was neither "shown in the prior art" nor "found in the prior art or the industry." Ex. E, at 68. However, these two seemingly "non-important" contributions are identical to the subject matter conveyed by Mr. Whitley to Mr. Domanico.

Said otherwise, the subject matter that Mr. Whitley conceived of was not part of the application that Mr. Domanico "invented" in his provisional, but somehow formed the basis for Mr. Domanico's response to the patent office when arguing the differences between the prior art and the claims that ultimately issued. This subject matter is both significant and, as argued by Plaintiff in obtaining the '243 patent, not part of the prior art. There is no evidence that Mr. Domanico himself undertook any shenanigans with the inventorship, as the subject matter of Mr. Whitley's corroborated contribution (claims 5 and 7) are not found in the invention Mr. Domanico ultimately assigned. Instead, this subject matter was contained in the files that Mr. Domanico sold to BCI (*see* Ex. B, at 177:11-16 ("I thought [files] maybe in a box somewhere in the attic at BCI, there might be something, and I didn't take any of the paperwork. They didn't belong to me. I was a 20 percent owner. I don't have rights to take all their files."), making the "coincidence" of the subject matter that almost matches verbatim the subject matter of Mr. Whitley's email to Mr. Domanico and Ms. Riordan entirely implausible: the evidence confirms that Mr. Whitley is a co-inventor of at least claims 5 and 7.

BCI alleges in its Complaint that it is the assignee and sole owner of all rights, title, and interest in and to the '243 patent. *See* Complaint, ¶ 11. However, the 2014 Email establishes that Mr. Whitley is a co-inventor of at least claims 5 and 7 the '243 patent. *See* Ex. 2 to Whitley Declaration (Ex. B). Although Mr. Domanico assigned his interest to BCI, that assignment had no effect on Mr. Whitley's undivided ownership in the technology. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) ("Patent owners may assign or transfer their ownership interest in the patent as personal property.") (citing 35 U.S.C. § 261)). As a result, BCI is merely a co-owner of the '243 patent, and because Mr. Whitley never assigned any interest to Mr. Domanico or BCI and does not consent to the filing of this case, BCI has not obtained the required consent of all co-owners to join as plaintiff in this action. *See Ethicon*, 135 F.3d at 1468. BCI therefore lacks standing to sue for infringement of the '243 patent, and this Court must dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### III. CONCLUSION

Based on the foregoing, BCI lacks standing to sue for infringement of the '243 patent. Accordingly, Milestone respectfully requests that this Court dismiss BCI's Complaint with prejudice.

Dated: December 1, 2023

Respectfully submitted,

By: */s/ Ketajh Brown*
Ketajh Brown (Wis. Bar No. 1106210)
ketajh.brown@klgates.com
Devon Beane
devon.beane@klgates.com
**K&L GATES LLP**
70 W. Madison Street
Suite 3100
Chicago, IL 60602
Tel.: (312) 807-4439

Erik Halverson
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111

*Attorneys for Defendants Milestone Bath Products Inc. and TightSeal*