# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BCI ACRYLIC, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>MILESTONE BATH PRODUCTS, INC.<br>d/b/a BELLASTONE BATH SYSTEMS<br>and TIGHTSEAL LLC,<br><br>   Defendants. | Case No. 23-CV-908-JPS |

## DECLARATION OF JEFFERY WHITLEY

I, Jeffery Whitley, am over the age of 18, and declare under penalty of perjury that the following statement is true and correct.

1. I have been in the bath remodeling industry for approximately 28 years. In 2012, I was working for Milestone Bath Products, Inc. ("Milestone"), a wholesale and manufacturing entity and Milestone Bath Experts Inc, a company I owned.

2. I first came into contact with Mr. Mark Domanico in the mid-2000s when I began working with a company called Luxury Bath as the exclusive Canadian distributor for certain products that Luxury Bath was making.

3. Milestone and I engaged a third-party printing and production firm, Optima, to assist in the development of bath walls, specifically acrylic bath wall sheet panels. Optima was selected because of their capabilities to do high-end UV ink printing

as well as CNC router processes. This arrangement was solidified, in part, through the agreement attached as Exhibit 1.

4. During this collaboration with Optima, I began developing a process for creating acrylic shower walls by removing certain grout line patterns from the acrylic boards, which created a realistic looking simulated tile pattern in the acrylic. The process provided Milestone's customers a cost-effective shower wall.

5. I also regularly collaborated with Mr. Mark Domanico on technical advances in the bathtub tile space. For example, in the 2014s Mr. Domanico and I were collaborating on a method of printing simulated marble patterns onto acrylic sheets. At the time, the industry was first printing simulated marble patterns onto acrylic film by graveur process and then extruding the film at high temperatures to produce a final acrylic sheet. Mr. Domanico and I developed an idea and collaboratively worked on ways to improve the low volume printing idea, regularly shared samples of our testing and improvements and exchanged ideas regarding proposed improvements. This type of collaborative process was a common reflection of how Mr. Domanico and I worked together in the space.

6. Additionally, in 2014, I collaborated with Mr. Domanico to advance the simulated tile wall CNC grooving method of manufacturing. No discussion of a patent application was entertained as the process was simple and the equipment and process was very commonly available. At the time, Mr. Domanico worked for Luxury Bath Technologies Inc., located in Libertyville, Illinois.

7. Together, Mr. Domanico and I developed a method of carving a tile pattern into a sheet of acrylic plastic, which would then have simulated grout lines via the carved

2

seams. This method simulated a tile shower wall much more efficiently and in a more cost effective manner than the methods we were familiar with at the time, primarily by reducing tooling costs as compared to the vacuum forming process used by Luxury Bath. Specifically, Mr. Domanico and I met to discuss Mr. Domanico's idea of carving out certain tile patterns from a multi-layer acrylic sheet. During this meeting, I commented that I had some concerns with regard to the form of grout line that Mr. Domanico was proposing, including that without a properly rounded corner, the grout lines could injure a customer. I also informed him that the cuts he was making need not be as deep as he was proposing.

8. Subsequent to this meeting, Mr. Domanico shipped some samples of the product to me. In response, I reiterated my comments to Mr. Domanico that it would be better for the consumer to use a rounded bit rather than the square bit the Mr. Domanico was using. I also commented to Mr. Domanico that it would be better to remove less material than Mr. Domanico's sample had removed.

9. This type of collaboration was indicative of the normal working relationship between Mr. Domanico and I. We would develop ideas, improve upon those ideas, and try to provide the best possible products. I have a technical engineering background and would routinely provide improvements to ideas that we would co-develop.

10. Mr. Domanico never informed me that he was filing for a patent on the idea we discussed, let alone the specific details that I provided to him in the fall of 2014.

11. In 2020, Milestone received a demand letter from BCI alleging patent infringement. I retained counsel and responded to BCI in 2020 that 1) Milestone

3

did not infringe and 2) that I believed that I was a co-inventor on the patent that BCI had identified in their letter, in part based on my suggestions to Mark during the development phase in 2014. The email within Exhibit 2 was attached to the response letter. The rest of Exhibit 2 is the remainder of the letter that I provided to BCI in 2020.

12. After I responded to BCI in 2020, I did not hear any additional communication regarding the patent matter until this litigation. I do not consent to this lawsuit.

Dated: 11/30/2023

DocuSigned by:
Jeffery Whitley
EBAF6C03C3004D0...

# Exhibit 1

# Non-Disclosure Non-Compete Agreement

This Agreement made as of December 12, 2012

**Between:**

Milestone Bath Products Inc.

(The "Discloser")

- And –

"Optima" . and its Affiliates, and Optima
Communication, (148514 Canada Inc.), and Gilles Chartrand

(The "Recipient")

Whereas Discloser owns, possesses or controls certain confidential information relating to bath products technology and other good and valuable proprietary trade information including but not limited to information on the acrylic bath wall sheet panels of the Discloser.

Whereas Recipient desires to receive, and Discloser is willing to supply, the information on the terms and conditions set out herein, solely for the purpose of manufacturing bath wall parts (the "Purpose").

NOW THEREFORE THIS AGREEMENT WITNESSES that in consideration of the premises and the covenants and agreements herein contained the parties hereto agree as follows:

1. Discloser shall at its discretion provide such of the Information to Recipient as is required for the Purpose, verbally or in writing. Nothing is this Agreement obligates Discloser to make any particular disclosure of Information.

2. All right, title and interest in and to the information shall remain the exclusive property of Discloser and Recipient for Discloser shall hold the Information in trust and confidence. No interest, license or any right respecting the Information, other than expressly set out herein, is granted to Recipient under this Agreement by implication or otherwise.

3. Recipient shall use all reasonable efforts to protect Discloser's interest in the Information and keep it confidential, using a standard of care no less than the degree of care that Recipient would be reasonably expected to employ for his own similar confidential information. In particular recipient shall not directly or indirectly disclose, allow access to, transmit or transfer the Information to a third party without the Discloser's prior written consent. Recipient shall disclose the Information only to those persons who have a need to know the Information for the purpose and who have been approved by the Discloser to receive the Information. Recipient shall, prior to disclosing the Information to such employees and consultants, issue appropriate instructions to them to satisfy its obligations herein and obtain their written agreement to receive and use the Information on a confidential basis on the same conditions a contained in this agreement.

4. The Information shall not be copied, reproduced in any form or stored in a retrieval system or data base by Recipient without the prior written consent of Discloser, except for such copies and storage as may reasonably required internally by recipient for the Purpose.

5. The obligations of the Recipient under paragraphs 3, 4 and 5 shall not apply to Information:

    a. Which at the time of disclosure is readily available to the trade or the public;
    b. Which Recipient can establish, by documented and competent evidence, was in its possession prior to the date of disclosure of such Information by Discloser; or
    c. Any Information, which the Recipient is by law required to disclose.

6. This Agreement shall not constitute any representation, warranty or guarantee to Recipient by Discloser with respect to the Information infringing and rights of third parties. Discloser shall not be held liable for any errors or omissions in the Information or the use or the results of the use of the Information.

7. Recipient shall, upon request of Discloser, immediately return the Information and all copies thereof in any form whatsoever under the power or control of Recipient to Discloser, and delete the Information from all retrieval systems and databases or destroy same as directed by Discloser and furnish to Discloser a certificate by and officer of Recipient of such deletion or destruction.

8. When requested by Discloser, Recipient will promptly provide a list containing the full name and address of any person having access to or copies of the Information and the reason such access is necessary.

9. Due to the valuable and proprietary nature of the Information to Discloser the obligations assumed by Recipient hereunder shall (a) be unlimited in time or territory or (b) if it is held by a court of competent jurisdiction that this provision is illegal, invalid or unenforceable, shall apply only within those territories within which Discloser then carries on business and only up to 10 years after disclosure of such Information. If any provision of this Agreement is held to be invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and remaining part of such provisions hereof shall continue in full force and effect.

10. Both parties agree that all referrals, references and introductions by either party will remain discrete for the original intended purpose and not be approached for other reasons.

11. The Recipient shall indemnify and save harmless the Discloser form all damages, losses, expenses and costs whatsoever resulting from the breach of this Agreement by the Recipient.

12. The Recipient shall not products same or similar items for the period where the Discloser is purchasing products from the Recipient and for a period of ~~five (5) years after~~ *3* any such last purchase. SAME OR SIMILAR LIMITED TO BATHROOM RELATED MATERIALS.

13. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and cancels and supersedes any prior understanding and agreements between the parties hereto with respect thereto. There are no representation, warranties, terms, conditions, undertakings or collateral agreements, express, implied or statutory, between the parties other than as expressly set forth in this Agreement.

14. This Agreement may not be assigned by either party without the prior written consent of the other party.

15. This Agreement shall ensure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and permitted assigns of the parties hereto.



16. This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario.

IN WITNESS WHEREOF the parties have executed this Agreement as of the date first above written.



On behalf of: Milestone Bath Products Inc.

Recipient (s)

# Exhibit 2

| | |
|---|---|
| **From:** | Jeff Whitley |
| **To:** | ▬▬▬▬▬▬ |
| **Subject:** | Fwd: new tile walls |
| **Date:** | Wednesday, July 22, 2020 3:51:27 PM |
| **Attachments:** | image001.png<br>image002.png |

**External Sender:**

Jeff Whitley
Milestone Bath

Begin forwarded message:

> **From:** Mark Domanico <md@luxbathinc.com>
> **Date:** November 5, 2014 at 5:44:13 PM EST
> **To:** Jeff Whitley <jeff.whitley@milestonebath.com>, Mary Riordan <MaryR@luxbathinc.com>
> **Cc:** Tiffany Koll <tiffany.koll@milestonebath.com>, Laura Dolamore <laura.dolamore@milestonebath.com>
> **Subject: RE: new tile walls**
>
> Jeff,
> We have already ordered a rounded bit for our CNC Router.
> Mary wanted you to have the samples ASAP.
> No one else has samples yet.
>
> Mark Domanico
>
> **From:** Jeff Whitley [mailto:jeff.whitley@milestonebath.com]
> **Sent:** Tuesday, November 4, 2014 10:44 AM
> **To:** Mary Riordan; Mark Domanico
> **Cc:** Tiffany Koll; Laura Dolamore
> **Subject:** new tile walls
>
> Hi Mary and Mark,
>
> I received the new wall samples and they look really nice.
>
> I wanted to share a concern that several people here voiced on this product, perhaps you have even heard this before.  Although we really love the concept, everybody here was concerned with the sharp edges at the grout lines.  We think this will prevent some people from purchasing the walls, and in an extreme case could be possible to actually cut someone.
>
> As a suggestion, the exact same process but using a different shaped bit may create a smoother cut that solves the above issues.  Less of an impression would also make it more realistic.
>
>  This is the suggestion
>
> This is the bit that I found on web for profile reference:
>
>  
>
> Jeff Whitley
> Milestone Bath Products
> 45 Wilson Avenue
> Belleville, ON
> K8P 1R7

613-968-7102 ext. 201
www.milestonebath.com



August 13, 2020

Erik J. Halverson
erik.halverson@klgates.com

T +1 312 807 4240
F +1 312 827 8000

Alan Samlan
Attorney
Knechtel, Demeur & Samlan
525 W. Monroe, Suite 2360
Chicago, IL 60661

Re: Milestone Bath & U.S. Patent No. 10,144,243

Dear Alan:

Thank you for your letter of August 6, 2020, and for your articulation of the infringement theory under 35 U.S.C. § 271(g).

**Milestone does not infringe the '243 Patent.**

It is a plaintiff's burden to establish infringement, not a defendant's burden to establish non-infringement; BCI is not entitled to a presumption of infringement. BCI's assertion that "until [Milestone] can demonstrate differently, [BCI] will maintain" its allegations of infringement fail to provide any specificity to support BCI's theory.

We are disappointed you have failed to provide a claim chart outlining the basis for your infringement "claim." Despite BCI's unwillingness (or more likely, inability) to articulate an infringement theory, Milestone can confirm it does not perform the steps of independent Claim 1. For example, and as outlined in the prior letter, Claim 1 first requires that tile pattern characteristics be determined. Then, these determined tile pattern characteristics are entered into a computer. Claim 1 then requires "selecting a first sheet of acrylic material based on *the first set of tile pattern characteristics*;" the first set of tile pattern characteristics are the same that are first introduced in step a) of Claim 1. In this regard, step a) must be done before step c) to provide antecedent basis for the term "the tile pattern characteristics" in step c). *See Function Media, LLC v. Google, Inc.,* 708 F.3d 1310, 1320 (Fed.Cir.2013) (concluding that a claim that recites "processing" an "electronic advertisement" necessarily indicates that "the creation of the ad must happen before the processing begins"). Milestone does not select any "sheet of acrylic material based on the first set of tile pattern characteristics."

For at least this reason, Milestone does not infringe claim 1 of the '243 Patent. As noted in our prior letter, to the extent BCI has any evidence to the contrary, we invite you to share it. Moreover, as you confirmed during our telephone conversation on July 8, 2020, BCI has done

K&L GATES LLP
70 W. MADISON ST. SUITE 3100 CHICAGO IL 60602
T +1 312 372 1121 F +1 312 827 8000 klgates.com

nothing to analyze infringement besides aside from reviewing the images you provided, from which you admitted there is no way to tell whether Milestone performs the steps of the method of Claim 1. Without a confidentiality agreement in place confirming that Milestone's confidential information will not be shared with BCI, Milestone will not provide additional detail regarding its manufacturing processes. If BCI would like access to this information, we expect that a confidentiality agreement be accompanied by a detailed claim chart outlining the theory of infringement beyond the conclusory assertion that Milestone "must follow the steps set forth in the '243 Patent."

**The '243 Patent is invalid at least in view of Milestone's own activities.**

BCI has failed to explain why it believes it is entitled to the priority date of U.S. Provisional Application No. 62/117,548 ("the '548 Provisional"). As set forth in Milestone's letter of July 27, 2020, there is no support in the as-filed provisional of "determining a first set of tile pattern characteristics." BCI's letter states that "the legal conclusions drawn from [your priority] analysis is something that BCI will only disclose in litigation." The veracity of any priority claim is highly relevant to Milestone's analysis of the '243 Patent and BCI's burden. BCI's unwillingness to provide a basis for its allegation that it is entitled to a filing date earlier than 2016 is further evidence of BCI's failure to even attempt a reasonable pre-filing investigation. A reasonable pre-suit analysis would include at least verifying publically available sources for prior activities. We direct you to the Wayback Machine's crawl of Milestone's website from January 28, 2016: https://web.archive.org/web/20160128094511/http://milestonebath.com:80/products/acrylic-bathwall-systems/. As noted before, the exact same process was used for product on sale before the filing of the '243 Patent that is used to create product today.

As noted above, Milestone will not provide any additional information regarding its current production methods (which are the same it utilized in 2015) absent a confidentiality agreement. Moreover, that the same production methods have been in place since 2015 confirms that only one of two scenarios exist: 1) the '243 Patent is invalid in view of Milestone's own activities (if the claims cover Milestone's current manufacturing process, or 2) the '243 Patent is not infringed by Milestone's manufacturing process (if the claims do not cover that process).

**BCI does not own the exclusive rights to the '243 Patent.**

Regarding your allegation that because you "have not been provided with such information and thus [your] assumption is it does not exist" only underscores that you have failed to perform the required diligence regarding the veracity of BCI's claims. Since it appears Mr. Domanico may not have been entirely truthful with you, please find the attached Exhibit A. Exhibit A is a copy of an email dated November 5, 2014 from Mark Domanico to Jeff Whitley and Mary Riordan, copying Tiffany Koll and Laura Dolamore, regarding advice to Mr. Domanico received from Mr. Whitley on November 4. The email confirms that before November 4, 2014, Mr. Domanico and Mr. Whitley were communicating regarding the use of CNC router bits to cut grout lines into a material, including exchanging samples.

Exhibit A confirms that before the filing date of the provisional, the parties (and even other third parties) were involved in the conception of the use of a CNC router to carve grout lines out of an acrylic sheet well before the '243 Patent was filed. Once again, it is not Milestone's burden to perform BCI's diligence. It is your obligation to seek from BCI and Mr. Domanico such highly relevant email communication between Mr. Domanico and other parties (including Mr. Whitley) from this period to confirm Mr. Whitley's, or others', involvement. Your failure to investigate the proper ownership of the '243 Patent before filing any litigation involving the '243 Patent is in violation of the most basic requirements for a proper pre-suit investigation.

In summary, Milestone again requests a proper articulation of BCI's infringement theory as Milestone does not select any "sheet of acrylic material based on the first set of tile pattern characteristics." Exhibit A shows that BCI has failed to properly investigate ownership of the '243 Patent and that Mr. Whitley should be named a co-inventor. Finally, Milestone's own commercial activity is an invalidating activity to the extent BCI contends Milestone's current production methods infringe any claim of the '243 Patent. BCI's refusal to articulate how it is entitled to the provisional date further shows it has failed to conduct an appropriate investigation in almost every respect.

Milestone's openness to exploring potential amicable business resolutions of this matter to avoid unnecessary distractions or disruptions remains. Unfortunately BCI has ignored Milestone's offer of such discussions. Therefore, unless BCI changes its mind, and given the failures in BCI's investigation articulated above and in my previous letter, we will consider the matter closed. Should you wish to provide the information requested or discuss in greater detail, I can be reached at erik.halverson@klgates.com or 312-807-4240.

The above is not an admission of liability or an exhaustive statement of all the relevant facts and law. Milestone expressly reserves all of its legal and equitable rights and remedies, including the right to seek attorneys' fees and expenses.

Very truly yours,

Erik J. Halverson


Enclosures: Exhibit A