# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BCI ACRYLIC, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MILESTONE BATH PRODUCTS, INC.<br>d/b/a BELLASTONE BATH SYSTEMS<br>and TIGHTSEAL LLC,<br><br>    Defendants. | Case No. 23-CV-908-JPS |

## DECLARATION OF MARK DOMANICO

I, Mark Domanico, am over the age of 18, and declare under penalty of perjury that the following statement is true and correct.

1. I have worked in manufacturing products for the bath remodeling industry for [##] years. My role during the time period in question was with a company by the name of Luxury Bath, located in Libertyville, Illinois and I was one of the owners. I am the listed inventor of U.S. Patent No. 10,144,243.

2. In the mid-2000s, I began working with a Canadian company, Bath Solutions Inc. which later became Milestone Bath Experts Inc., through which I met a Mr. Jeffery Whitley. Bath Solutions Inc. was the Canadian Distributor for Luxury Bath.

3. Mr. Whitley was well known to have significant experience in the bath remodeling industry and had an engineering background as well as process

engineering and continuous improvement. For a period of time while being the Canadian Distributor, Mr. Whitley worked with Luxury Bath on other special projects including facilitating a group of American Luxury Bath Dealers to help Luxury Bath improve its business. Mr. Whitley and I would regularly discuss and collaborate on ideas regarding ideas for new products and improved product offerings in the bath space. These projects were not formal in nature as there were many product improvement projects ongoing at any given time.

4. For example, in approximately 2014, we began working on a way of improving the method of printing marble patterns on acrylic sheets. At the time, the industry was first printing simulated marble patterns onto acrylic film by graveur process and then extruding the film at high temperatures to produce a final acrylic sheet. This process had limitations on the ability to print certain images as well as high volume ordering requirements.

5. Mr. Whitley and I developed an idea and collaboratively worked on ways to improve the low volume printing idea, and specifically on how to protect the ink after printing, with Mr. Whitley printing samples in Canada and myself at my location in Illinois. We regularly shared samples of our testing and improvements and exchanged ideas regarding proposed improvements. We would regularly travel back and forth, share samples and ideas we had about how to improve the printing process. This was not a formally controlled project and I do not have records relating to this project. Ultimately, we were unable to perfect the printing and the idea did not progress.

6. In the same time frame, I had noticed that plastic name tags were being CNC grooved and the look might be duplicated for grout lines on acrylic shower walls. I discussed this idea with Mr. Whitley and it was very simple to groove acrylic sheets with a commonly available CNC router machine. We (Mr. Whitley and I) started developing a method of carving a tile pattern into a sheet of acrylic plastic, which could then have different colors ink applied to the carved seams. This method simulated a tile shower wall much more efficiently and in a more cost effective manner than the methods we were familiar with at the time. This was not a formally controlled project and I do not have records relating to this project.

7. We again regularly shared samples and ideas. In the fall of 2014, I received an email from Mr. Whitley in response to certain proto-types I had sent to Mr. Whitley, suggesting that we instead use a rounded bit to have smoother grout lines and to set a less-deep CNC bit depth so the grout line was shallower. I ultimately incorporated this concept into our improved method. Mr. Whitley and I together developed the grout line cut-out idea and jointly perfected the implementation of this idea.

8. The 2014 and 2015 time period was very challenging for Luxury Bath and myself, and I returned to a role running the day to day operations of the company due to the current CEO failing his duties. This later resulted in the winding down of the company and the sale of assets to BCI, a competitor at the time. It was my legal councle that suggested the CNC grooved product might be Patentable and I applied for a provisional patent application on February 18, 2015. This application was later sold to BCI as part of the assets of Luxury Bath.

9. I understand that I signed a declaration in the context of my patent application and did not identify Mr. Whitley as a co-inventor when I applied for the patent. It was my understanding at the time that because I had invented the subject matter of claim 1, I was the sole inventor. However, Mr. Whitley and I co-invented the ideas in claim 5 (directed towards the rounded edges of the grout lines) and 7 (directed towards the shallower grout lines), as evidenced by the email he sent me in the fall of 2014. I did not discuss my intention for a Patent application with Mr. Whitley.

10. This type of collaboration was indicative of the normal working relationship between Mr. Whitley and I. We would develop ideas, improve upon those ideas, and try to provide the best possible products. Mr. Whitley had a technical engineering background and would routinely provide improvements to ideas that we would co-develop.

11. I have recently reviewed old emails and unfortunately cannot seem to find any relevant emails with Mr. Whitley discussing the technology or my plans to patent the idea. At that time period, most of my communications were via phone and in-person meetings but I do not recall discussing any intentions to patent the ideas.

Dated: October __, 2023

                                                                  Mark Domanico